**IN RE Jane DOE, Appellant**

**NO. 14-16-00555-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Concurring Opinions filed September 8, 2016.

Frances M. Northcutt, Houston, TX, for In re Jane Doe.

Panel Consists of Chief Justice Frost and Justices Boyce and Jamison.

## OPINION

Martha Hill Jamison, Justice

On July 13, 2016, the trial court issued a judgment denying minor Applicant Jane Doe's request for a court order authorizing her to consent to an abortion without the parental notice and consent required by sections 33.002 and 33.0021 of the Texas Family Code ("judicial bypass"). On July 25, 2016, this court issued a judgment affirming the trial court's denial of the application and stating that an opinion would follow. The reasons for this court's judgment are explained in this opinion, which has been written in a way to preserve the confidentiality of the identity of the minor. *See* Tex. Fam. Code Ann. § 33.004(c–1).

### FACTUAL AND PROCEDURAL BACKGROUND

Applicant filed her application for a judicial bypass on July 7, 2016 pursuant to section 33.003 of the Texas Family Code. She was 17 years old on this date. Applicant asserted both statutory grounds for obtaining a judicial bypass: (1) that she is mature and sufficiently well informed to make the decision to have an abortion

performed without notification to or consent of her mother; and (2) that notification and attempt to obtain consent would not be in her best interest.[1] *See* Tex. Fam. Code § 33.003(i).

Hearings were conducted on the application on July 7, 2016, at which a guardian ad litem was appointed for Applicant, and on July 13, 2016. The court heard testimony from Applicant and her aunt. The guardian ad litem also addressed the court. On July 13, 2016, the trial court signed a judgment that denied the application and found based on the testimony and evidence presented that "Applicant is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of her parent, however, the Court finds the notification and attempt to obtain consent would be in the best interest of the minor." Applicant appealed to this court, arguing that the trial court was required by the statute to grant the application based on its finding that Applicant is mature and sufficiently well informed.

### ANALYSIS

### A. Overview of Statutory Structure

According to the United States Supreme Court, the State may not impose a blanket provision requiring the consent of a parent as a condition for abortion of an unmarried minor; the State must provide a mechanism to allow for exceptions. *See Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). The Texas Legislature enacted such a mechanism in 1999 as Chapter 33 of the Texas Family Code. The Texas Supreme Court construed and applied the statute in eight opinions during 2000 and 2002.[2]

---

1. Applicant has only one living parent and no managing conservator or guardian.

2. *See In re Doe 10,* 78 S.W.3d 338 (Tex.2002); and *In re Doe 11,* 92 S.W.3d 511 (Tex.2002); *In re Doe 1,* 19 S.W.3d 249 (Tex.2000); *In re Doe 2,* 19 S.W.3d 278 (Tex.2000); *In re Doe 3,* 19 S.W.3d 300 (Tex.2000); *In re Doe 4,* 19

The Texas Legislature amended Chapter 33 of the Family Code in 2003 and 2015. The 2015 amendments have a particular bearing on this appeal. Among other things, these amendments (1) changed the burden of proof for obtaining a judicial bypass from "preponderance of the evidence" to "clear and convincing evidence," and (2) added section 33.003(i–1), which discusses factors the court may consider in determining whether the minor is mature and sufficiently well informed to obtain a judicial bypass. *See* Tex. Fam. Code § 33.003(i) and (i–1).

The legislature added Chapter 171 to the Health and Safety Code in 2003. Among other things, this chapter mandates informational materials that must be published by the Texas State Department of Health Services (the Department) and furnished to the minor. *See* Tex. Health & Safety Code §§ 171.012, 171.014.

The Texas Supreme Court has not issued any opinions construing these statutes in light of these amendments and additions. In 2015, the Texas Supreme Court issued an order amending the Rules and Forms for a Judicial Bypass of Parental Notice and Consent, originally approved in 1999, to address some of these amendments and additions.

**B. Applying Section 33.001(i–3) of the Family Code**

Section 33.001(i–3) of the Family Code provides:

The court *shall* enter an order authorizing the minor to consent to the performance of the abortion without notification to and consent of a parent, managing conservator, or guardian and shall execute the required forms if the court finds by clear and convincing evidence, as defined by Section 101.007, that:

(1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification *to or consent of a* parent, managing conservator, or guardian; *or*

(2) the notification and attempt to obtain consent would not be in the best interest of the minor.

Tex. Fam. Code § 33.003(i–3) (emphases added).[3]

Based on the trial court's affirmative finding on subsection (1), its negative finding on subsection (2), and its denial of the application, it appears that the trial court interpreted section 33.001(i–3) to require the minor to prove both subsections (1) and (2) to be entitled to relief. We disagree because the statute's unambiguous terms dictate otherwise. The use of "shall" and "or" in the statute imposes a mandatory duty on the trial court to enter a judicial bypass order if it makes either of the two stated findings. *See* Tex. Gov't Code § 311.016(2). Thus, if the trial court finds by clear and convincing evidence that the minor is mature and sufficiently well-in-

---

S.W.3d 322 (Tex.2000); *In re Doe 4*, 19 S.W.3d 337 (Tex.2000); *In re Doe 1*, 19 S.W.3d 300 (Tex.2000).

**3.** Section 33.001(i–3) was rewritten by the Legislature in 2015 and was incorporated by the Texas Supreme Court in 2015 into Rule 2.5(b) of the Rules for a Judicial Bypass of Parental Notice and Consent under Chapter 33. Rule 2.5(b) provides:

**Grounds for granting application.** The court must grant the application if the mi-

nor establishes, by clear and convincing evidence:

(1) that the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notice to, or consent of, a parent, managing conservator, or guardian; or

(2) that the notification or attempt to obtain consent would not be in the minor's best interest.

formed or that notification and attempt to obtain consent would not be in the best interest of the minor, then the court must grant the minor's application. *See In re Doe 2*, 19 S.W.3d 278, 289 (Tex.2000) (Owen, J., concurring). "[T]he trial court has no discretion in the matter." *Id.*

Applicant therefore argues that because the trial court found in its judgment that "[t]he Applicant is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of her parent ...", the trial court was required under section 33.003(i–3)(1) to grant her application for a judicial bypass and erred by denying it. While we agree with Applicant's interpretation of section 33.003(i–3), we conclude that the trial court did not err by denying the application because as discussed below, the evidence is not legally sufficient under a "clear and convincing evidence" standard to support the trial court's finding that Applicant is "sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent."[4]

**C. Standard of Review for Legal Sufficiency of the Evidence when Clear and Convincing Evidence Is Required**

In reviewing the legal sufficiency of the evidence supporting a finding that, as here, must be proven by clear and convincing evidence, "an appellate court must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could

have formed a firm belief or conviction that its finding was true.'" *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 170 (Tex.2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex.2004)). "In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true." *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex.2014). "If the reviewing court determines that no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, then the court must conclude that the evidence is legally insufficient." *Id.*

**D. Requirements for Proving that a Minor is "Sufficiently Well Informed"**

In *In re Doe*, 19 S.W.3d 249 (Tex.2000) (*Doe 1*), the Texas Supreme Court construed the version of section 33.003(i) in effect before the 2015 amendments. There, the court held that the minor must prove three things to establish that she is "sufficiently well informed":

> First, she must show that she has obtained information from a healthcare provider about the health risks associated with an abortion and that she understands those risks. That would include an understanding of the risks associated with the particular stage of the minor's pregnancy.
>
> Second, she must show that she understands the alternatives to abortion and their implications. As with any medical

---

4. "Where, as here, a case is tried without a jury and the trial court issues findings of fact, the reviewing court is bound by any unchallenged finding *unless the evidence is legally insufficient to support it.*" *Saulsberry v. Ross*, 485 S.W.3d 35, 41 (Tex.App.—Houston [14th Dist.] Nov. 3, 2015, no pet.) (emphasis added) (citing *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014)). Here, we cannot rely on the trial court's finding that Applicant is mature and sufficiently well informed because the evidence is legally insufficient to support that finding. Further, we must uphold a lower court's judgment on any legal theory that supports it, even if the court gives an incorrect reason for its judgment. *See Guar. County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986).

procedure, part of making an informed decision is knowing the available alternatives. A minor should be able to demonstrate that she has given thoughtful consideration to her alternatives, including adoption and keeping the child. She should also understand that the law requires the father to assist in the financial support of the child. (citation omitted). She should not be required to justify why she prefers abortion above other options, only that she is fully apprised of her options.

*Third, she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion,* which can be significant if not severe for some women. She must also show that she has considered how this decision might affect her family relations. Although the minor need not obtain this information from licensed, professional counselors, *she must show that she has received information about these risks from reliable and informed sources, so that she is aware of and has considered these aspects of the abortion procedure.* *Id.* at 256–57 (emphases added). *See also In re Doe 4*, 19 S.W.3d 337, 339 (Tex.2000) (restating these three required showings).[5]

Regardless of whether Applicant made the first and second showing in this case, as discussed below, we conclude that Applicant failed to produce clear and convincing evidence on this record that she is aware of the emotional and psychological aspects associated with undergoing an abortion.

*Doe 1* was decided in 2000. We must evaluate the potential effect of the 2015 amendments to Chapter 33 of the Family Code and the 2003 addition of Chapter 171 of the Health and Safety Code on *Doe 1's* third required showing. The Legislature amended Chapter 33 to add section 33.003 (i–1), which requires the court to consider certain factors in determining whether the minor is mature and sufficiently well informed. It provides:

> In determining whether the minor meets the requirements of Subsection (i)(1), the court shall consider the experience, perspective, and judgment of the minor. The court may:
>
> (1) consider all relevant factors, including:
>
> (A) the minor's age;
>
> (B) the minor's life experiences, such as working, traveling independently, or managing her own financial affairs; and
>
> (C) *steps taken by the minor to explore* her options *and the consequences of those options;*
>
> (2) inquire as to the minor's reasons for seeking an abortion;
>
> (3) *consider the degree to which the minor is informed about the state-published informational materials described by Chapter 171, Health and Safety Code;* and
>
> (4) require the minor to be evaluated by a licensed mental health counselor, who shall return the evaluation to the court for review within three business days.

Tex. Fam. Code § 33.003(i–1) (emphases added).[6] Section 33.003(i–1) permits the court to consider the steps taken by the minor to explore her options and the consequences of those options. These conse-

---

5. We conclude, as is relevant *infra*, that the Department qualifies as a "reliable and informed source" under *Doe I.*

6. Section 33.001(i-1) was incorporated verbatim by the Texas Supreme Court in 2015 into Rule 2.5(c) of the Rules for a Judicial Bypass of Parental Notice and Consent under Chapter 33.

quences potentially would include the emotional and psychological aspects of undergoing an abortion. But the amended statute does not expressly state that the minor must prove she is aware of the emotional and psychological aspects of undergoing an abortion.

In 2003, the Legislature enacted Chapter 171 of the Health and Safety Code (the Woman's Right to Know Act). *See* Health & Safety Code § 171.001. Section 171.014(a) of the Act requires the Department to publish informational materials to provide certain information required by sections 171.012, 171.015 and 171.016. *See* Tex. Health & Safety Code § 171.014(a).

The Department created and published in 2003 a booklet entitled "A Woman's Right to Know Information Material" to provide the informational materials required by section 171.014(a). *See* Texas Register, Volume 37, Number 34, page 6,456 (August 24, 2012). Section 172 of the Department's regulations states that "Booklet" means "'A Woman's Right to Know Information Material' that includes certain information specified in Health and Safety Code, Chapter 171." *See* Texas Register, Volume 37, Number 34, pages 6391-6818 (August 24, 2012).[7]

The booklet is published by the Department and maintained on its website as required by statute. It contains a section entitled, "Emotional Side of an Abortion."[8] This section discusses the emotional and psychological aspects of undergoing an abortion as follows:

You should know that women experience different emotions after an abortion. Some women may feel guilty, sad, or empty, while others may feel relief that the procedure is over. Some women have reported serious psychological effects after their abortion, including depression, grief, anxiety, lowered self-esteem, regret, suicidal thoughts and behavior, sexual dysfunction, avoidance of emotional attachment, flashbacks, and substance abuse. These emotions may appear immediately after an abortion, or gradually over a longer period of time.

Counseling or support before and after your abortion is very important. If family help and support are not available to you, it may be harder for you to deal with the feelings that appear after an abortion. Talking with a professional counselor before having an abortion can help a woman better understand her decision and the feelings she may experience after the procedure. If counseling is not available to the woman, these feelings may be more difficult to handle. Many pregnancy-resource centers offer pre- and post-abortion counseling services; these centers are listed in the resource directory.

Section 33.003(i–1) provides that the trial court may consider the degree to which the minor is informed about the state-published informational materials (*i.e.* the "A Woman's Right to Know" booklet) that includes the above-stated information re-

---

**7.** Both the trial court and our court may and should take judicial notice of these regulations. The power of the trial court to take judicial notice of the contents of the Texas Register and Texas Administrative Code is indisputable. *Eckmann v. Des Rosiers*, 940 S.W.2d 394, 399 (Tex.App.—Austin 1997, no writ). In fact, the duty of the trial court to take judicial notice of agency regulations published in the Texas Register and Texas Admin-

istrative Code is mandatory, even in the absence of a request to take judicial notice. *Id.* *See also* Tex. Gov't Code §§ 2002.022, 2002.054 (stating that the Texas Register and state agency rules "are to be judicially noticed").

**8.** A revised May 2016 draft of the booklet is currently under review by the Department.

garding the emotional and psychological aspects of undergoing an abortion.

■ The 2015 amendments did not change the "sufficiently well informed" language of section 33.003(i), which the supreme court interpreted in *Doe 1* to require that the minor show that she is aware of the emotional and psychological aspects of undergoing an abortion.[9] *See In re Doe*, 19 S.W.3d at 256–57; *see also Patton v. Am. Home Mut. Life Ins. Co.*, 143 Tex. 373, 377, 185 S.W.2d 420, 422 (1945) ("[S]ince such statutes had been reenacted by the Legislature after the statutes had been construed by the courts, it is to be presumed that the Legislature intended the statutes to operate ... as interpreted ...."). We therefore conclude that the "sufficiently well informed" language mandates the three required showings identified in *Doe 1* even after the 2015 amendments to Chapter 33 of the Family Code and the 2003 addition of Chapter 171 of the Health and Safety Code. *See Doe 1*, 19 S.W.3d at 256–57. Thus, we conclude Applicant had the burden of proving by clear and convincing evidence that she is aware of the emotional and psychological aspects of undergoing an abortion.

**E. No Clear And Convincing Evidence that Doe Is Aware of the Emotional and Psychological Aspects of Undergoing An Abortion**

■ At the July 13 hearing, the ad litem attorney stated Applicant has seen the fetus on an ultrasound and has heard the fetus's heartbeat. Applicant testified as follows at the July 7 hearing in response to her lawyer's questions:

Q. I gave you the booklet from the Department of Health that talks about the stage of pregnancies and actually the clinic gave it to you. You already had one. But the stage of the pregnancy, risks, problems, options. Do you feel like you understood all those?

A. Yes, ma'am.

The trial court reasonably could have determined that the referenced booklet is "A Woman's Right to Know" because it is published by the Department and it discusses the subject matters referenced in the lawyer's question.

Applicant also testified as follows at the July 7 hearing in response to the court's questions:

Q. When you went to the doctor, did you get any information or literature or printed materials from a doctor?

A. About the procedure?

Q. Yes.

A. Yes, sir.

Q. Did you get any information from the doctor about alternatives to abortion?

A. Yes, sir.

Q. And did you read those documents?

A. Yes, sir.

Q. I say documents. Did you read that information?

A. Yes, sir.

Q. Did you understand that information?

A. Yes, sir.

9. The version of Family Code section 33.003(i) applicable when *Doe 1* was decided in 2000 required the court to determine by a preponderance of the evidence "whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian." Act of May 25, 1999, 76th Leg., R.S., ch. 395, § 1, 1999 Tex. Gen. Laws. 2466, 2469. The current version of Family Code section 33.003(i) requires the court to determine by clear and convincing evidence "whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, managing conservator, or guardian." Tex. Fam. Code § 33.003(i).

The trial court reasonably could have concluded that one of the documents that Applicant received from the doctor is "A Woman's Right to Know" because section 171.013 of the Health and Safety Code requires a doctor to furnish that booklet to the minor at least 24 hours before the abortion is to be performed. *See* Tex. Health & Safety Code § 171.013(a).[10]

Both the trial court and our court may take judicial notice of the content of "A Woman's Right to Know" and that it discusses some of the emotional and psychological aspects of undergoing an abortion under Texas Rule of Evidence 204(b)(1).[11] The record indicates that the trial judge was familiar with the booklet as he, on his own initiative, questioned Applicant about whether she received, read and understood it. We presume the trial judge took judicial notice of the booklet and its contents.[12]

However, Applicant's general testimony that she read the booklet is not sufficient by itself to establish the third required showing of *Doe 1*. Applicant did not specifically testify that she read and understood the "Emotional Side of an Abortion" section of the booklet that discusses these aspects.

**10.** Additionally, section 171.012(a)(5) provides that before receiving the required sonogram, the minor must certify that the informational materials have been provided. Tex. Health & Safety Code § 171.012(a)(5).

**11.** "A Woman's Right to Know" is posted on the Department's website at www.dshs.texas.gov/wrtk/default.shtm?terms=A% 20woman% 27s% 20right% 20to% 20know. The material issued by a public authority, such as the Department, pursuant to law is self-authenticating. *See* Tex. R. Evid. 902(5). It is proper to take judicial notice of documents on government websites, such as this booklet. *See Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 259 (Tex.App.—Corpus Christi 2014, no pet.); *see also Pak v. AD Villarai, LLC*, No. 05–14–01312–CV, 2016

At the July 7 hearing, Applicant testified that she visited with a counselor at a "crisis pregnancy center" for an hour and a half and that the center gave her literature. At the July 13 hearing, Applicant's aunt testified that she and Applicant returned to the crisis pregnancy center and the center's representative indicated that the center was not going to help Applicant unless she was going to keep the baby or put the baby up for adoption. Applicant's aunt further testified that she and Applicant also went to a medical clinic[13] and that the personnel at the clinic

> talked to [Doe] and informed her of everything on their end, and, you know, if she was to do it, what everything would incur. And then after that we, you know, went home and talked about it even more. That way, you know the decision was not made the day that we went there. The decision was made after that. That way she knew the reality of both ends.

The trial court's examination of the aunt continued as follows:

Q. Okay. And do you feel like she understood what her options were?

A. Oh, yeah, absolutely.

WL 637736, at *6 n. 2 (Tex.App.—Dallas Feb. 16, 2016), *reh'g denied*, 487 S.W.3d 775 (Tex. App.—Dallas 2016, no pet.) (recognizing that the court may take judicial notice of documents on government websites).

**12.** *Cf. Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist.] 1992, writ denied) ("Even where a plaintiff does not request the court to do so, and where the court does not announce that it took notice, a reviewing court may nevertheless presume that the trial court took judicial notice of reasonable attorney's fees.").

**13.** The name of the clinic is omitted to preserve the confidentiality of the identity of the pregnant minor.

Q. And are you convinced that she carefully considered each of those options?

A. I am.

The aunt answered affirmatively when asked whether, in her opinion, Applicant was mature enough to make the decision without involving her mother and was sufficiently well informed to make an informed decision.[14]

At the July 13 hearing, the ad litem stated to the court:

[S]he has seen the baby on the ultrasound. She's heard the heartbeat. They've had a counselor with her at the other clinic; and they went through everything, talking with her as to what the ramifications of this decision were. She did also see the first clinic, though, the pregnancy crisis clinic; and they talked to her about her options for keeping the child. And, so, she was able to see both sides of it.

The sufficiency of this evidence must be evaluated in the light of supreme court precedent. In *In re Doe*, 19 S.W.3d 346, 361 (Tex.2000) (*Doe 2*), the Texas Supreme Court concluded that Doe *conclusively established* that she was aware of the emotional and psychological aspects of undergoing an abortion based on the following evidence:

Doe spoke to an older relative and another minor about their abortion decisions and how they felt about them. After this, Doe discussed the emotional effects of abortion with the organization's counselor, who also gave Doe written materials about the emotional consequences of abortion. Doe read these materials several times. Although

she did not discuss the emotional consequences of abortion with anyone opposed to abortion, she was not required to do so.

Doe testified that, after consulting these sources, she understood that many women experience guilt after an abortion and some women experience depression, but that abortion also provided many women with a feeling of relief. Doe did not merely consider these emotional consequences in the abstract; she carefully considered how each of these alternatives would affect her emotionally. She reasoned that all of her choices would involve guilt, but that she felt most comfortable with the decision to have an abortion.

Doe also indicated that she understood the gravity of her decision. She considered how abortion would affect her emotionally in light of its serious consequences. Doe asked to see the fetus on the ultrasound video, testifying that she considered it her responsibility to do so. Doe also testified that she understood and considered the fetus's development. Doe understood that her decision to terminate her pregnancy was irrevocable, and consequently recognized the seriousness of her decision. She also considered an abortion's effects on her spiritual well-being and concluded, based on her personal spiritual beliefs, that it would not have an adverse effect.[15]

(Citation omitted.)

In this case, there is no direct testimony that Applicant is aware of the emotional and psychological aspects of undergoing an abortion. Whether she is aware of the emotional and psychological aspects of un-

---

14. Rule 2.4(e) of the Rules for a Judicial Bypass of Parental Notice and Consent under Chapter 33, entitled "Hearing to be Informal," states "[T]he court should attempt to rule on the application without regard to technical defects in the application or the evidence."

15. The statute in effect at the time of *Doe 2* required a preponderance of the evidence.

dergoing an abortion was not expressly mentioned or inquired about at either the July 7 or 13 hearing. *See In re Doe 3,* 19 S.W.3d 300, 302–03 (Tex.2000) (Gonzales, J., concurring) (noting the record did not establish as a matter of law that Doe was aware of the emotional and psychological aspects of undergoing an abortion because there was no testimony that she was aware of those aspects). The record does contain various general statements to the effect that Applicant understands her options, had been told "everything" and is aware of "the reality." But this testimony is not clear that the terms "options," "everything," and "reality" include the emotional and psychological aspects of undergoing an abortion.

After considering all of the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable trier of fact could not have formed a firm belief or conviction on this record that Doe was aware of and considered the emotional and psychological aspects of undergoing an abortion. *See Hall,* 168 S.W.3d at 170. Accordingly, the evidence is legally insufficient to support the trial court's finding, by clear and convincing evidence, that Applicant is sufficiently well informed. We therefore disregard this finding.[16]

### F. No Abuse of Discretion in Best Interest Determination

■ The trial court did not find by clear and convincing evidence that the notification and attempt to obtain consent would *not* be in the best interest of Applicant as required by section 33.003(i–3)(2) in order

for her request to be granted; rather, the trial court found that this *would be* in the best interest of Applicant.

■ Applicant's brief does not present any issue as to whether the trial court abused its discretion with regard to its best interest determination. Normally, this would preclude our court from reviewing this issue. "Grounds of error not asserted by points of error or argument are considered waived on appeal." *Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991); *Cont'l Carbon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* No. 14–11–00162–CV, 2012 WL 1345748, at *4 (Tex.App.—Houston [14th Dist.] Apr. 17, 2012, no pet.) (mem. op., not designated for publication). However, because this is a special appeal provided for by section 33.004 of the Family Code in which the minor may but is not required to file a brief, we conclude that the general rule that an appellate court may not consider an issue that is not raised in the appellant's brief does not apply. So we proceed to consider this issue.

■ A trial court's determination regarding whether notification is in the minor's best interests is reviewed under the abuse of discretion standard. *In re Doe 2,* 19 S.W.3d 278, 281 (Tex.2000). "Unlike the 'mature and sufficiently well informed' determination, in which the trial court is solely making factual findings, determining the minor's best interests requires the trial court to balance the possible benefits and detriments to the minor in notifying her

---

**16.** We are not required to review the factual sufficiency of the evidence to support the trial court's finding. In *In re Jane Doe,* the Supreme Court of Texas stated that courts of appeals may not reverse and remand judicial bypass proceedings. 19 S.W.3d at 257, n. 3 ("Texas Parental Notification Rule 3.3(b) does not allow a court of appeals to remand. . . ."). Because the appellate remedy for factual in-

sufficiency of the evidence is to reverse the judgment and remand, we conclude that courts of appeals may not review the trial court's findings in such proceedings for factual sufficiency. *See id.; see also Wright Way Spraying Serv. v. Butler,* 690 S.W.2d 897, 898 (Tex.1985) (appellate court has no jurisdiction to render judgment on a factual insufficiency point).

parents." *Id.* "This type of balancing necessarily involves the exercise of judicial discretion and should be reviewed on that basis." *Id.*

A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Chavez v. Chavez*, No. 14–14–00481–CV, 2016 WL 1613240, at *2 (Tex.App.—Houston [14th Dist.] April 21, 2016, no pet. h.). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Id.* There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's exercise of its discretion. *Id.*

Section 33.003(i–2) of the Family Code provides:

> (i-2) In determining whether the notification and the attempt to obtain consent would not be in the best interest of the minor, the court may inquire as to:
>> (1) the minor's reasons for not wanting to notify and obtain consent from a parent, managing conservator, or guardian;
>> (2) whether notification or the attempt to obtain consent may lead to physical or sexual abuse;
>> (3) whether the pregnancy was the result of sexual abuse by a parent, managing conservator, or guardian; and
>> (4) any history of physical or sexual abuse from a parent, managing conservator, or guardian.

Tex. Fam. Code § 33.003(i–2).[17]

In *In re Doe 4*, 19 S.W.3d 337, 339–40 (Tex.2000), the Texas Supreme Court provided the following guidance for making the "best interest" determination:

> In making this determination, the "trial court should weigh the advantages and disadvantages of parental notification in the minor's specific situation." *Doe 2*, 19 S.W.3d at 282. To aid in this determination, we have listed five factors for the trial court to consider: (1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure; (4) the relationship between the parent and the minor and the effect of notification on that relationship; and (5) whether notification may lead the parents to withdraw emotional and financial support from the minor. *Id.* at 282. Because the determination must be made based on the specific facts of each case, these factors are not exhaustive. The trial court should therefore consider all relevant circumstances, including the minor's credibility, in making the best-interests determination. *Id.* at 282; *Doe 4(I)*, 19 S.W.3d at 325.

The evidence relevant to these factors was as follows. Applicant testified to instances of past physical abuse.[18] Applicant testified that her mother has anger issues and has hit, kicked, and slapped her before. The risk of physical abuse or physical danger no longer exists or is remote because Applicant has not lived with her mother for over six months.

■ Applicant testified that she believed that if she informed her mother that

---

17. Section 33.001(i–2) was incorporated verbatim by the Texas Supreme Court in 2015 into Rule 2.5(d) of the Rules for a Judicial Bypass of Parental Notice and Consent under Chapter 33.

18. Certain details of past physical abuse are omitted to preserve the confidentiality of the identity of the pregnant minor.

she was pregnant and that she had decided to have an abortion, her mother would kick Applicant out of the house, stop talking to her, and would "be very, very mad." "[A] minor's generalized fear of telling her parents does not, by itself, establish that notification would not be in the minor's best interests." *In re Doe 2*, 19 S.W.3d at 282. Further, Applicant admitted that her mother could not kick her out of the house because she no longer lived with her mother.

The risk that the mother would withdraw financial support and emotional support is nonexistent or not significant. Applicant currently receives no financial support from her mother and does not appear to rely on her mother for any emotional support. Applicant does not have a close relationship with her mother. She has only had sporadic communication with her mother, every month or so.

Based on this record, we conclude that Applicant has not shown that the trial court clearly abused its discretion by failing to find that the notification and attempt to obtain consent would not be in the best interest of Applicant.

### CONCLUSION

For these reasons, on July 25, 2016, we issued a judgment that affirmed the trial court's denial of the application for a judicial bypass.

Frost, C.J., Concurring

Kem Thompson Frost, Chief Justice, concurring

This is a confidential appeal from the trial court's denial of a minor's application for a court order authorizing her to consent to the performance of an abortion without notification to and consent of a parent, a proceeding known as a "Judicial Bypass Proceeding."[1] I respectfully concur in the court's judgment affirming the trial court's denial of the judicial bypass. Though I agree with the outcome of the appeal, I part ways with the majority in the legal analysis and method of review. I also write separately to underscore the importance of making judicial opinions open to the public.

### I. MERITS ANALYSIS

Under Texas's judicial-bypass statute, for the minor to have been entitled to relief, there must have been clear and convincing evidence that either (1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, or (2) the notification and attempt to obtain consent would not be in the minor's best interest.[2] After finding that there was clear and convincing evidence proving the first proposition but not the second, the trial court denied the minor's application. Although the trial court erred by impliedly concluding that the court could deny the minor's application after making one of the findings in the minor's favor, this error did not cause the rendition of an improper judgment, because the evidence is legally insufficient to support the first proposition and the record contains legally sufficient evidence to support the trial court's failure to find the second proposition.

**A. This court has jurisdiction over all parts of the trial court's judgment, including all of its findings.**

On the day appellant (the "Minor") filed her application, the trial court held an evidentiary hearing and heard testimony

---

1. *See* Tex. Fam. Code Ann. § 33.003(a) (West, Westlaw through 2015 R.S.).

2. *See id.* § 33.003(i).

from the Minor.[3] The trial court appointed a guardian ad litem and set a second evidentiary hearing. At the second hearing, the trial court heard testimony from the Minor and one of the Minor's adult relatives. The guardian ad litem also addressed the trial court. At the end of the second hearing, the trial court denied the application and signed a judgment that included the trial court's findings of fact and conclusions of law.

Under the Texas Rules of Civil Procedure, a trial court's written findings of fact and conclusions of law go in a separate document from the trial court's judgment; the trial court is not to recite findings of fact in its judgment.[4] But, in a Judicial Bypass Proceeding, the trial court's ruling on the application includes both the signed judgment and the trial court's findings of fact and conclusions of law, and the findings and conclusions may be included in the trial court's judgment.[5] In accordance with Rule 2.5(a) of the Rules for a Judicial Bypass of Parental Notice and Consent

under Chapter 33 of the Family Code,[6] the trial court included its findings of fact and conclusions of law in its judgment.

The Minor filed a general notice of appeal from the trial court's judgment, perfecting this confidential appeal. A court of appeals has appellate jurisdiction over an appeal by a minor from a judgment denying the minor's application in a Judicial Bypass Proceeding.[7] The statute giving the intermediate appellate court jurisdiction does not limit the court's jurisdiction to a particular part of the trial court's judgment.[8] Because the Minor has filed a general notice of appeal under Family Code section 33.004 from a judgment in which the trial court denied the Minor's application under Family Code section 33.003, this court has appellate jurisdiction over all parts of the judgment, including the part containing the trial court's fact findings.[9]

**B. This court has general authority to review the judgment to determine whether it should be affirmed or re-**

---

3. *See id.* § 33.003(a).

4. *See* Tex. R. Civ. App. 296, 297, 299a.

5. Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5(a) (West, Westlaw through 2015 R.S.) (stating that the trial court's ruling includes the signed judgment and the findings and conclusions); Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 1.1 (West, Westlaw through 2015 R.S.) (stating that the judicial-bypass rules govern Judicial Bypass Proceedings and that other procedural rules also apply to Judicial Bypass Proceedings unless they are inconsistent with the Rules or Chapter 33 of the Texas Family Code).

6. Unless otherwise stated, a reference in this opinion to a "Rule" or to the "Rules" is to the current version of the Rules for a Judicial Bypass of Parental Notice and Consent under Chapter 33 of the Family Code.

7. Tex. Fam. Code Ann. § 33.004(a) (West, Westlaw through 2015 R.S.).

8. *Compare id.* ("A minor whose application under Section 33.003 is denied may appeal to the court of appeals having jurisdiction over civil matters in the county in which the application was filed."), *with* Tex. Civ. Prac. & Rem Code § 51.014(a)(6) (West, Westlaw through 2015 R.S.) (allowing interlocutory appeal from certain orders denying a summary-judgment motion but limiting the appellate court's jurisdiction to certain parts of such orders).

9. *See* Tex. Fam. Code Ann. § 33.004(a); *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex.1972); *Kings River Trail Ass'n, Inc. v. Pinehurst Holdings, L.L.C.*, 447 S.W.3d 439, 451 (Tex.App.—Houston [14th Dist.] 2014, pet. denied); *Muthukumar v. Santa Rosa Apartments*, No. 01–11–00151–CV, 2011 WL 2937443, at *1 (Tex. App.—Dallas July 22, 2011, pet. denied) (mem. op.); *Basaldua v. Hadden*, 298 S.W.3d 238, 240–41 (Tex.App.—San Antonio 2009, no pet.).

**versed, without traditional requirements of assignment of error and adequate briefing.**

In reviewing the trial court's judgment, we must interpret and apply the applicable provisions of Family Code Chapter 33 and the Rules. This court is not called upon to address the constitutionality or wisdom of abortion.[10] The Minor has not challenged the constitutionality of any applicable statute or rule, and the Supreme Court of Texas has instructed that this court should not determine sua sponte the constitutionality of the judicial-bypass statute.[11]

An appeal by a minor whose application was denied in a Judicial Bypass Proceeding is a confidential appeal, and the court of appeals must issue its judgment in the appeal not later than the fifth business day after the minor perfects appeal; otherwise, the trial court's judgment is deemed to be affirmed.[12] In addition to being confidential and highly expedited, appellate review in a Judicial Bypass Proceeding is different

from normal appellate review in other ways.

Appeals in a Judicial Bypass Proceeding need not include any briefing by the appellant.[13] Therefore, normal requirements of assignment of error and adequacy of briefing in the appellant's opening brief do not apply to this court's review of the trial court's judgment.[14] In this unusual appellate context, the court of appeals reviews the record to determine whether the trial court's judgment should be affirmed or reversed.[15] At a minimum, it appears that, whether briefed by the minor or not, the court of appeals should review the legal sufficiency of the evidence supporting the trial court's findings as to whether clear and convincing evidence proves that "(1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, managing conservator, or guardian; or (2) the notification and attempt to obtain consent would not be in the best interest of the minor."[16]

---

10. *See In re Doe*, 19 S.W.3d 249, 251 (Tex. 2000).

11. *See In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000).

12. *See* Tex. Fam. Code Ann. § 33.004; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 3.3(f).

13. Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 3.3(a).

14. *Compare id.* (stating court of appeals may decide appeal in Judicial Bypass Proceeding without any briefing), *with Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986) (stating that "the court of appeals may not reverse a trial court's judgment in the absence of properly assigned error"), *and* Tex. R. App. P. 38.1(f) (stating that the brief must state concisely all issues presented for review), *and* Tex. R. App. P. 38.1(i) (stating that the brief must contain a clear and concise argument for the contentions made). Though the Rules address to some extent the nature of the ap-

pellate review in Judicial Bypass Proceedings, the applicable statute says nothing about the substance of the court of appeals's review. *See* Tex. Fam. Code Ann. § 33.004; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 3.3(a), (b).

15. *See* Tex. Fam. Code Ann. § 33.004; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 3.3(a), (b).

16. Tex. Fam. Code Ann. § 33.003(i). In one part of its first opinion in *In re Jane Doe*, the Supreme Court of Texas seemed to suggest, without expressly saying so, that courts of appeals could review the trial court's findings for factual sufficiency. *See In re Doe*, 19 S.W.3d at 253. But, in that same opinion, the high court stated that courts of appeals may not reverse and remand. *See id.* at 257, n. 3. Because the appellate remedy for the factual insufficiency of the evidence is to reverse the judgment and remand, and because the high court has concluded that courts of appeals may not grant this remedy in appeals in Judicial Bypass Proceedings, courts of appeals

The only party to a Judicial Bypass Proceeding mentioned in the applicable statute and the Rules is the minor.[17] The only provision in Family Code Chapter 33 for an appeal from the trial court's ruling in a Judicial Bypass Proceeding is one for an appeal by a *minor whose application was denied.*[18] The Minor has not cited and research has not revealed any statute prohibiting an appellate court in a Judicial Bypass Proceeding from reviewing a finding favorable to the minor and contained in a judgment denying the minor's application. Likewise, no case, statute, or rule requires liberal construction in favor of granting the minor's application or strict construction against granting the minor's application. Therefore, the reviewing court is to follow the general rule and interpret the statutes and rules based on plain meaning rather than on either a strict or liberal construction of the text.[19]

**C. The trial court erred by impliedly concluding that the court could deny the Minor's application after making one of the two statutory findings in the Minor's favor.**

Section 33.003, entitled "Judicial Approval," lays out the steps and consequences relating to the trial court's adjudication of the merits of a minor's application in a Judicial Bypass Proceeding, stating:

(i) The court shall determine by clear and convincing evidence, as described by Section 101.007, whether:

(1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, managing conservator, or guardian; or

(2) the notification and attempt to obtain consent would not be in the best interest of the minor.

(i-1) In determining whether the minor meets the requirements of Subsection (i)(1), the court shall consider the experience, perspective, and judgment of the minor. The court may:

(1) consider all relevant factors, including:

(A) the minor's age;

(B) the minor's life experiences, such as working, traveling independently, or managing her own financial affairs; and

(C) steps taken by the minor to explore her options and the consequences of those options;

(2) inquire as to the minor's reasons for seeking an abortion;

---

may not review the trial court's findings in such proceedings for factual sufficiency. *See id.*

**17.** *See* Tex. Fam. Code Ann. § 33.003; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 1.1, *et seq.*

**18.** *See* Tex. Fam. Code Ann. § 33.001, *et seq.* (West, Westlaw through 2015 R.S.).

**19.** *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 355–58, 364–66 (2012) (discussing how general approach to statutory construction is to adhere to the fair meaning of the statute's text rather than to strictly construe or to liberally construe the text). In the Supreme Court of Texas's second opinion in *In re Jane Doe,* the high court implied an omitted finding in favor of the minor even though the trial court's judgment was against the minor. *See In re Doe,* 19 S.W.3d 346, 357 (Tex.2000). The high court based this analysis on the then-applicable statute holding that, if the trial court did not timely rule on the minor's application, the application would be *deemed to be granted. See id.* The applicable statute in the case under review does not so provide, and under the current regime for Judicial Bypass Proceedings, if the trial court fails to rule timely, the application is deemed to be denied. *See* Tex. Fam. Code Ann. § 33.003; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5(g).

(3) consider the degree to which the minor is informed about the state-published informational materials described by Chapter 171, Health and Safety Code; and

(4) require the minor to be evaluated by a licensed mental health counselor, who shall return the evaluation to the court for review within three business days.

(i-2) In determining whether the notification and the attempt to obtain consent would not be in the best interest of the minor, the court may inquire as to:

(1) the minor's reasons for not wanting to notify and obtain consent from a parent, managing conservator, or guardian;

(2) whether notification or the attempt to obtain consent may lead to physical or sexual abuse;

(3) whether the pregnancy was the result of sexual abuse by a parent, managing conservator, or guardian; and

(4) any history of physical or sexual abuse from a parent, managing conservator, or guardian.

(i-3) The court shall enter an order authorizing the minor to consent to the performance of the abortion without notification to and consent of a parent, managing conservator, or guardian and shall execute the required forms if the court finds by clear and convincing evidence, as defined by Section 101.007, that:

(1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without no-

tification to or consent of a parent, managing conservator, or guardian; or

(2) the notification and attempt to obtain consent would not be in the best interest of the minor.

(j) If the court finds that the minor does not meet the requirements of Subsection (i-3), the court may not authorize the minor to consent to an abortion without the notification authorized under Section 33.002(a)(1) and consent under Section 33.0021.[20]

We review the trial court's interpretation of applicable statutes de novo.[21] In construing a statute, our objective is to determine and give effect to the Legislature's intent.[22] If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state.[23] If the meaning of the statutory language is unambiguous, we are to adopt the interpretation supported by the plain meaning of the provision's words.[24]

Under the unambiguous language of the statute, for a minor to obtain a court order authorizing the minor to consent to an abortion without notification to and consent of a parent, managing conservator, or guardian, there must be clear and convincing evidence before the trial court that (1) the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, managing conservator, or guardian ("Mature and Well Informed Proposition"); or (2) the notification and attempt to obtain consent would

---

**20.** Tex. Fam. Code Ann. § 33.003.

**21.** *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989).

**22.** *See Nat'l Liab. & Fire Ins. Co.*, 15 S.W.3d at 527.

**23.** *Id.*

**24.** *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

not be in the best interest of the minor ("Best Interest Proposition").[25] If presented with clear and convincing evidence of either proposition, then the trial court should grant the minor's application.[26] If not presented with clear and convincing evidence of either proposition, then the trial court should deny the minor's application.[27] This legal framework is reflected in Family Code section 33.003, Rule 2.5(a), and in Form 2D attached to the Rules (Form 2D is a form of judgment that may be used by the trial court in crafting its judgment in a Judicial Bypass Proceeding.)[28] The trial court did not use Form 2D; instead, the trial court signed a judgment finding that the Minor "is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of her parent" and that "the notification and attempt to obtain consent would be in the best interest of the minor." The trial court thus found clear and convincing evidence of the Mature and Well Informed Proposition and no clear and convincing evidence of the Best Interest Proposition.[29]

On appeal, this court granted the Minor's request to submit a brief.[30] In her brief, the Minor argues that, because the trial court found clear and convincing evidence of the Mature and Well Informed Proposition, section 33.003(i–3) and Rule 2.5(b) required the trial court to grant the Minor's application. The Minor is correct that, based on its findings, the trial court should have granted the Minor's application.[31] But, because the trial court instead denied the Minor's application, the trial court impliedly concluded that it could deny the application after finding that there was clear and convincing evidence of the Mature and Well Informed Proposition. The trial court erred in so concluding.[32] Yet, the trial court's erroneous conclusion is harmless if the evidence is legally insufficient to support the Mature and Well Informed Proposition and if the trial court did not abuse its discretion in its finding as to the Best Interest Proposition. So, the next step is to address whether the trial court's erroneous conclusion probably caused the rendition of an improper judgment.[33]

## D. The trial court's error was harmless.

The applicable statutes and rules state that, if the trial court finds that there is not clear and convincing evidence of the

**25.** *See* Tex. Fam. Code Ann. § 33.003.

**26.** *See id.*

**27.** *See id.*

**28.** *See id.*; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5, Form 2D.

**29.** *See* Tex. Fam. Code Ann. § 33.003. As the Supreme Court of Texas previously has noted, the Best Interest Proposition is a negative proposition; the trial court should determine whether there is clear and convincing evidence that the notification and attempt to obtain consent would *not* be in the best interest of the minor. *See* Tex. Fam. Code Ann. § 33.003(i); *In re Doe 2*, 19 S.W.3d 278, 282 (Tex.2000). Though the trial court found that the notification and attempt to obtain consent would be in the Minor's best interest, the trial court necessarily found that there was not clear and convincing evidence that the notification and attempt to obtain consent would not be in the Minor's best interest. *See In re Doe 2*, 19 S.W.3d at 282.

**30.** *See* Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 3.3(a).

**31.** *See* Tex. Fam. Code Ann. § 33.003; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5.

**32.** *See* Tex. Fam. Code Ann. § 33.003; Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5.

**33.** *See* Tex. R. App. P. 44.1(a).

Mature and Well Informed Proposition or the Best Interest Proposition, the court may not grant the minor's application.[34] Nonetheless, if on appeal from a judgment denying a minor's application based on such findings, the court of appeals concludes that, as a matter of law, the record contains clear and convincing evidence as to either of these propositions, then, despite the trial court's findings, the court of appeals should reverse and render the proper judgment based on such evidence—a judgment granting the application.[35]

In cases such as today's case, in which we have a reporter's record of the evidence before the trial court, a finding of fact is not conclusive on appeal if the evidence is legally insufficient to support the finding.[36] Though the applicable statute states that the trial court should grant the application if it finds clear and convincing evidence of the Mature and Well Informed Proposition, the statute does not require appellate courts to reverse a judgment denying an application and render judgment granting the application if as a matter of law there is no such evidence and if the trial court did not err in finding no clear and convincing evidence of the Best Interest Proposition.[37] In such a situation, the proper judgment would be to deny the application.[38] Therefore, if the evidence presented to the trial court is legally insuf-

ficient to support its finding as to the Mature and Well Informed Proposition and if the trial court did not err in finding that there was no clear and convincing evidence of the Best Interest Proposition, then the trial court's erroneous conclusion did not cause the rendition of an improper judgment and so is harmless error.[39]

### 1. Legal Insufficiency of the Evidence to Support the Mature and Well Informed Proposition

The Supreme Court of Texas has held that a trial court's finding as to the Mature and Well Informed Proposition should be reviewed on appeal to determine whether the evidence is legally sufficient to support the finding.[40] " 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[41] When, as in today's case, the burden of proof is by clear and convincing evidence, evidence that merely exceeds a scintilla is not legally sufficient evidence.[42] In a legal-sufficiency review of a finding based on clear and convincing evidence, we are to look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.[43] To give appropriate deference to the factfin-

---

34. *See* Tex. Fam. Code Ann. § 33.003(j); Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5(e).

35. *See In re Doe 4*, 19 S.W.3d 322, 326 (Tex. 2000).

36. *See In re D.J.V.*, No. 14–15–00419–CV, 2015 WL 6498917, at *3 (Tex.App.—Houston [14th Dist.] Oct. 27, 2015, no pet.) (mem. op.); *Urban v. Barker*, 2007 WL 665118, at *1 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (mem. op.).

37. *See* Tex. Fam. Code Ann. § 33.003.

38. *See id.*

39. *See* Tex. R. App. P. 44.1(a).

40. *See In re Doe*, 19 S.W.3d at 253.

41. Tex. Family Code Ann. § 101.007 (West, Westlaw through 2015 R.S.); Tex. Fam. Code Ann. § 33.003(i).

42. *See State v. K. E. W.*, 315 S.W.3d 16, 20 (Tex.2010).

43. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex.2004).

der's conclusions and the role of a court conducting a legal-sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.[44] A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.[45] This does not mean that a court must disregard all evidence that does not support the finding.[46] Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.[47] If, after conducting its legal-sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.[48]

In addressing what was necessary for the evidence to prove that a minor "is sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents," the Supreme Court of Texas instructed as follows:

> We conclude that a trial court should take into account the totality of circumstances the minor presents in determining whether she is mature and sufficiently well informed. In order to establish that she is sufficiently well

informed, the minor must make, at a minimum, three showings.

First, she must show that she has obtained information from a healthcare provider about the health risks associated with an abortion and that she understands those risks. . . .

Second, she must show that she understands the alternatives to abortion and their implications . . .

Third, she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion, which can be significant if not severe for some women. She must also show that she has considered how this decision might affect her family relations. Although the minor need not obtain this information from licensed, professional counselors, she must show that she has received information about these risks from reliable and informed sources, so that she is aware of and has considered these aspects of the abortion procedure.[49]

In four later *Jane Doe* cases, the Supreme Court of Texas reaffirmed this legal standard for the minimum proof necessary to show that the minor is sufficiently well informed.[50] The high court decided all of these cases under a prior version of Family Code section 33.003.[51] Thus, as a first step, this court must consider whether this precedent still is binding in Judicial Bypass Proceedings under the current version of the statute. Significantly, the language in section 33.003 regarding the Mature and Well Informed Proposition

---

44. *Id.*

45. *Id.*

46. *Id.*

47. *Id.*

48. *Id.*

49. *In re Doe*, 19 S.W.3d at 251, 256–57.

50. *See In re Doe*, 19 S.W.3d 346, 358 (Tex. 2000); *In re Doe 4*, 19 S.W.3d 337, 339 (Tex. 2000); *In re Doe 4*, 19 S.W.3d at 324; *In re Doe 2*, 19 S.W.3d 278, 282 (Tex.2000).

51. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 395, § 1, 1999 Tex. Gen. Laws 2466, 2466–71.

did not change in any material way.[52] The former statute contained a third proposition—whether parental notification may lead to physical, sexual, or emotional abuse of the minor.[53] This lead-to-abuse proposition did not relate to the issue of whether the minor is sufficiently well informed to make the decision to have an abortion performed without notification of a parent, and, logically, the deletion of this proposition would not affect the construction of the part of the statute containing the Mature and Sufficiently Well Informed Proposition.

Since the Supreme Court of Texas decided the early *Jane Doe* cases in 2000, the Legislature has raised the burden of proof from a preponderance of the evidence to clear and convincing evidence.[54] Though this change increased the burden of proof in a Judicial Bypass Proceeding, the change did not alter the substantive elements that must be proved. After the high court decided the early *Jane Doe* cases cited above, the Legislature added subsection (i-1) of section 33.003. In that subsection, the Legislature did not limit the relevant factors the trial court may consider but identified specific factors that the

court shall take into account. The provision states that "[i]n determining whether the minor meets the requirements of Subsection (i)(1), the court shall consider the experience, perspective, and judgment of the minor. The court may ... consider all relevant factors, including. ..."[55] The trial court's consideration of the experience, perspective, and judgment of the minor is consistent with the above-cited cases, and this part of subsection (i-1) does not address what showing the minor must make to establish that she is "sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent."[56] The statement that the trial court should consider all relevant factors also is consistent with the above-cited cases, and this part of subsection (i-1) does not address what showing the minor must make to establish that she is "sufficiently well informed. ..."[57]

Thus, the changes to the statute have not abrogated the legal standard promulgated in *In re Jane Doe*.[58] Though the Supreme Court of Texas has the ability to consider whether this legal standard should be changed, as an intermediate court of appeals, we are bound to apply

---

**52.** Under the version of Family Code section 33.003 applicable in 2000, the Mature and Well Informed Proposition was "whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian." Act of May 25, 1999, 76th Leg., R.S., ch. 395, § 1, 1999 Tex. Gen. Laws. 2466, 2469. Under the current version of Family Code section 33.003 the Mature and Well Informed Proposition is "whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent, managing conservator, or guardian." Tex. Fam. Code Ann. § 33.003(i).

**53.** *See* Act of May 25, 1999, 1999 Tex. Gen. Laws at 2469.

**54.** *Compare* Tex. Fam. Code Ann. § 33.003(i), *with* Act of May 25, 1999, 1999 Tex. Gen. Laws. at 2469.

**55.** Tex. Fam. Code Ann. § 33.003(i-1).

**56.** · *See id.*; *In re Doe*, 19 S.W.3d at 251, 256–57.

**57.** *See* Tex. Fam. Code Ann. § 33.003(i-1); *In re Doe*, 19 S.W.3d at 251, 256–57. The current version of Rule 2.5 tracks subsection (i-1) and likewise does not address what showing the minor must make to establish that she is "sufficiently well informed. ..." *See* Tex. R. Jud. Bypass Paren. Not. & Cons. Chap. 33 Fam. Code 2.5(c).

**58.** *See* Tex. Fam. Code Ann. § 33.003; *In re Doe*, 19 S.W.3d at 251, 256–57.

this high-court precedent.[59] Therefore, for the evidence to have established that the Minor is sufficiently well informed, the Minor, at a minimum, must have made three showings. One of the showings is that she is aware of the emotional and psychological aspects of undergoing an abortion.[60]

The emotional and psychological aspects of undergoing an abortion can be significant, if not severe, for some women.[61] Thus, we must consider the record evidence, if any, that shows the Minor's awareness of the emotional and psychological facets of the abortion decision. The Minor must have shown that she has received information from reliable and informed sources about these particular risks, so that she is aware of and has considered these emotional and psychological aspects of the abortion decision.[62] The record contains no such evidence.

The Minor gave testimony regarding her awareness of the options available to her in light of her pregnancy and her awareness of medical risks of an abortion procedure. But the record contains no direct evidence that the Minor has received information about the emotional and psychological aspects of undergoing an abortion. Nor does the record contain an iota of evidence that the Minor is aware of or has considered the emotional and psychological aspects of undergoing an abortion. Indeed, the words were not uttered a single time at either hearing. The reporter's record from the trial court does not contain the phrase "emotional and psychological," nor is there any mention of the emotional or psychological aspects of undergoing an abortion or

the Minor's awareness of these significant and severe risks associated with the abortion decision.

The record does contain various general statements to the effect that the Minor understands her options, that the Minor was told "everything," and the Minor is aware of "the reality." But, this testimony does not address whether the terms "options," "everything," and "reality" include the emotional and psychological aspects of undergoing an abortion. These sweeping, conclusory statements could hardly suffice to establish an awareness of specific and severe risks that were not once mentioned by name in any testimony or piece of evidence in the record.

During her testimony, the Minor indicated that she had received "the booklet from the Department of Health that talks about the stage of pregnancies ... risks, problems, options." The Minor testified that she feels like she understood all of these matters. The Minor then testified that she understands that there are risks if you carry a child to term and that these risks are usually the same as the risks of abortion but that there is a "higher risk of death with childbirth." The booklet in question was neither identified by name nor offered into evidence.[63] It is not part of the appellate record.

Even if this court were to presume for the purpose of the legal-sufficiency analysis that the booklet the Minor received contained information regarding the emotional and psychological aspects of undergoing an abortion, that would not fill the void in the evidentiary record. No reasonable factfinder could form a firm be-

59. See Lubbock County, Texas v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002).

60. See id.

61. See In re Doe, 19 S.W.3d at 256–57.

62. See id.

63. The evidence before the trial court did not include any documentary evidence.

lief or conviction that the Minor read or comprehended the material or that by merely receiving it she became aware of the emotional and psychological facets of undergoing an abortion. Even under this presumption, after considering all the evidence under the applicable standard of review, no reasonable factfinder could form a firm belief or conviction that the Minor is aware of the emotional and psychological aspects of undergoing an abortion.[64] Because the evidence is legally insufficient to support a finding that the Minor is aware of the emotional and psychological aspects of undergoing an abortion, the evidence is also legally insufficient to support a finding that the Minor is sufficiently well informed to make the decision to have an abortion performed without notification to or consent of a parent.[65] Therefore, even presuming that the evidence is legally sufficient to support the trial court's finding that the Minor is mature, the evidence is legally insufficient to support the trial court's finding as to the Mature and Well Informed Proposition.[66]

Because the evidence is legally insufficient, this court need not and should not address whether the trial court took judicial notice of the booklet entitled "A Woman's Right to Know" on the Texas Department ment of State Health Services's website. Another reason it is unnecessary to address this issue is that there is no evidence in the record that would allow a reasonable factfinder to form a firm belief or conviction that the booklet mentioned in the Minor's testimony is the current version of the booklet entitled "A Woman's Right to Know" on the Texas Department of State Health Services's website. No testimony identifies the title of the booklet, nor is there any testimony that the booklet the Minor received addresses the emotional and psychological aspects of undergoing an abortion. Therefore, taking judicial notice of the website version of the booklet would not be relevant to the trial court's adjudication of the Minor's application.

In addition, the trial court did not mention that it took any judicial notice when the court explained the reasons for its judgment in its findings of fact and conclusions of law or anywhere else in the record. Fourteenth Court of Appeals precedent holds that, even absent anything in the record showing that the trial court took judicial notice, this court should presume the trial court took judicial notice of the court's own file.[67] But, notably, this line of precedent does not apply to adjudicative facts and may not be used as a means to add to the trial evidence considered by the

---

64. See Matbon, Inc. v. Gries, 288 S.W.3d 471, 489–90 (Tex.App.—Eastland 2009, no pet.) (holding that evidence was legally insufficient to show by clear and convincing evidence that defendant had actual awareness of the risk involved, as required to prove gross negligence); Clayton v. Wisener, 190 S.W.3d 685, 698–99 (Tex.App.—Tyler 2005, pet. denied) (holding that evidence was legally insufficient to show by clear and convincing evidence that defendant had actual awareness that his extreme and outrageous conduct exposed the plaintiff to an extreme risk of substantial harm); Martin v. U–Haul Co., No. 01–03–01123–CV, 2005 WL 615629, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 17, 2005, pet.

denied) (holding that evidence was legally insufficient to show by clear and convincing evidence that defendant had actual awareness of the risk involved) (mem. op.).

65. See In re Doe, 19 S.W.3d at 251, 256–57.

66. See Tex. Fam. Code Ann. § 33.003(i); In re Doe, 19 S.W.3d at 251, 256–57. Therefore, this finding should not be given effect by this court. See In re D.J.V., 2015 WL 6498917, at *3; Urban, 2007 WL 665118, at *1.

67. See In re K.F., 402 S.W.3d 497, 505 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

trial court in a bench trial.[68] The Minor has not cited and research has not revealed a Texas case allowing an appellate court to presume—without any basis in the record—that a trial court in a bench trial took judicial notice of a document not in evidence so that the appellate court then could consider the document as part of the trial evidence that might support the trial court's findings. This court cannot consider evidence not before the trial court when the trial court made its challenged judgment and findings.[69] The majority errs in doing so.

### 2. Legal Sufficiency of the Evidence to Support the Trial Court's Finding as to the Best Interest Proposition

The trial court found that there was no clear and convincing evidence of the Best Interest Proposition. Though the Supreme Court of Texas has concluded that a finding as to the Mature and Well Informed Proposition should be reviewed to determine whether the evidence is legally sufficient to support it, the high court has concluded that a finding as to the Best Interest Proposition should be reviewed for an abuse of discretion.[70] A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.[71] Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion.[72] There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's exercise of its discretion.[73]

In determining whether there is no clear and convincing evidence of the Best Interest Proposition, the trial court should examine the minor's specific situation and weigh the advantages and disadvantages of parental notification and the attempt to obtain parental consent.[74] In making this determination, the trial court should consider all relevant circumstances.[75] The Supreme Court of Texas has stated that a trial court should consider the following non-exclusive factors:

(1) the minor's emotional or physical needs;

(2) the possibility of emotional or physical danger to the minor;

(3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure;

(4) the relationship between the parent and the minor and the effect of notification on that relationship; and

(5) whether notification may lead the parents to withdraw emotional and financial support from the minor.[76]

---

**68.** *See id.*; *Malekzadeh v. Malekzadeh*, No. 14–05–00113–CV, 2007 WL 1892233, at *9 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.).

**69.** *See, e.g., Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 707 (Tex.2008); *Univ. of Tex. v. Morris*, 162 Tex. 60, 344 S.W.2d 426, 429 (1961); *Phillips Petroleum Co. v. Bowden*, 108 S.W.3d 385, 401 (Tex.App.—Houston [14th Dist.] 2003), *rev'd in part on other grounds and aff'd in part*, 247 S.W.3d 690 (Tex.2008).

**70.** *See In re Doe 2*, 19 S.W.3d at 282; *In re Doe*, 19 S.W.3d at 251, 253.

**71.** *Chavez v. Chavez*, No. 14–14–00481–CV, 2016 WL 1613240, at *2 (Tex.App.—Houston [14th Dist.] April 21, 2016, no pet. h.) (mem. op.).

**72.** *Id.*

**73.** *See In re Doe 2*, 19 S.W.3d at 282.

**74.** *See id.*

**75.** *See id.*

In light of the Legislature's deletion of the lead-to-abuse proposition (whether parental notification may lead to physical, sexual, or emotional abuse of the minor) and the Legislature's addition of subsection (i-2) to section 33.003, a trial court also may consider:

> (1) the minor's reasons for not wanting to notify and obtain consent from a parent, managing conservator, or guardian;
>
> (2) whether notification or the attempt to obtain consent may lead to physical, sexual, or emotional abuse of the minor;
>
> (3) whether the pregnancy was the result of sexual abuse by a parent, managing conservator, or guardian, and
>
> (4) any history of physical, sexual, or emotional abuse from a parent, managing conservator, or guardian.[77]

Because trial courts can view a witness's demeanor, they are given great latitude in believing or disbelieving a witness's testimony, particularly when the witness is interested in the outcome.[78] Acting as factfinder, a trial judge, therefore, can reject the uncontroverted testimony of an interested witness, such as the Minor, unless the testimony is clear, positive, direct, and there are no circumstances tending to discredit or impeach it.[79] Under the applicable standard of review, the evidence does not prove as a matter of law that the notifica-

tion and attempt to obtain parental consent would not be in the Minor's best interest. The trial court did not abuse its discretion in finding that there is no clear and convincing evidence of the Best Interest Proposition.[80]

### E. Conclusion

The trial court erred in impliedly concluding that it could deny the Minor's application after finding clear and convincing evidence of the Mature and Well Informed Proposition. Nonetheless, the evidence that was before the trial court is legally insufficient to support the trial court's finding as to the Mature and Well Informed Proposition, and the trial court did not err in finding no clear and convincing evidence of the Best Interest Proposition. Therefore, the trial court's erroneous conclusion did not cause the rendition of an improper judgment. Because the trial court's error was harmless, the correct appellate outcome is to affirm the trial court's judgment.

### II. THE PUBLICATION DECISION

In an effort to protect the identity of pregnant minors seeking judicial-bypass orders, in 1999, the Texas Legislature prohibited courts of appeals from publishing any opinion issued in a judicial-bypass appeal.[81] Texas lawmakers amended the judi-

---

76. *See id.*

77. *See* Tex. Fam. Code Ann. § 33.003(i–2); Act of May 25, 1999, 1999 Tex. Gen. Laws. at 2469; *In re Doe 2*, 19 S.W.3d at 282.

78. *See In re Doe 4*, 19 S.W.3d at 322.

79. *Id.*

80. *See In re Doe 4*, 19 S.W.3d at 339–40 (holding that trial court did not abuse its discretion in failing to find finding that notification of the minor's parents would not be in her best interest); *In re Doe 4*, 19 S.W.3d at 325–26 (holding that, though relevant parts of

minor's testimony were uncontroverted, they were not clear, and that trial court did not abuse its discretion in failing to find finding that notification of the minor's parents would not be in her best interest); *In re Doe 2*, 19 S.W.3d at 281–82 (holding that trial court did not abuse its discretion in finding that notification of the minor's parents would not be in her best interest).

81. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 395, § 1, 1999 Tex. Gen. Laws 2466, 2469–70, amended by Act of May 29, 2015, 84th Leg., R.S., ch. 436, § 6, 2015 Tex. Sess. Law Serv. 1696, 1702 (codified at Tex. Fam. Code § 33.004).

cial-bypass statute, effective January 1, 2016, to lift that prohibition and expressly permit courts of appeals to publish opinions relating to rulings in judicial-bypass appeals, providing the opinions are written so as to preserve the confidentiality of the minor's identity.[82] Now, courts of appeals are expressly empowered, but not required, to publish their opinions in judicial-bypass cases.[83] The panel members unanimously agree to publish the opinions in this confidential appeal.

Giving the public access to judicial opinions promotes the constitutional model of putting ideas in the public square and government's decisions in the daylight, where they can be known and debated. The public cannot test what it cannot see.

In a democracy, freedom thrives only in the light. With rare exceptions not in play in today's case,[84] the public must have a means of knowing how courts of appeals interpret the law and apply it to the cases before them. If judges have the power to place their written opinions out of public view, there must be checks on that power to guard against abuses. Public access is an important and effective check on judicial power. The Texas Rules of Appellate Procedure provide that "[a]ll opinions of courts of appeals are open to the public

and must be made available to public reporting services, print or electronic."[85]

Our country has deep traditions that promote public access to judicial decision-making. This bedrock principle arose in part as a reaction to secret proceedings in the Star Chamber and other prerogative courts.[86] Long ago, the United States Supreme Court recognized the importance of public access as a check on the exercise of judicial power, noting that judicial knowledge that court decisions are subject to public scrutiny restrains abuses of judicial authority.[87] The high court emphasized the importance of public availability of judicial opinions as a check on judicial power:

> "Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance."[88]

Because public access is a first principle of judicial decision-making, courts recognize a strong presumption favoring public access to all judicial records and documents. The strong presumption is rooted in both the common law and the First Amendment.[89] The underlying rationale for

---

**82.** *See* Act of May 29, 2015, 2015 Tex. Sess. Law Serv. at 1702 (codified at Tex. Fam. Code § 33.004)

**83.** *See* Tex. Fam. Code Ann. § 33.004(c–1).

**84.** *See, e.g.* Dakota. S. Rudesill, *Coming to Terms with Secret Law,* 7 HARV. NAT'L SEC. J. 241, 301 (2015) (noting examples of confidential proceedings in the Foreign Intelligence Surveillance Court).

**85.** Tex. R. App. P. 47.3.

**86.** *See Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1177 n. 6 (6th Cir. 1983).

**87.** *In re Oliver,* 333 U.S. at 271 & n. 26, 68 S.Ct. at 506 & n. 26.

**88.** *Id.* (quoting Jeremy Bentham, 1 Bentham Rationale of Judicial Evidence 524 (1827)).

**89.** *See In re Violation of Rule 28(d),* 635 F.3d 1352, 1356 (Fed.Cir.2011) (citing *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)); *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 575 (4th Cir.2008); *SEC v. Van Waeyenberghe,* 990 F.2d 845, 849 (5th Cir.1993) (recognizing the common-law presumption of public access to judicial documents). The presumption must not be dismissed lightly given the dangers that come from restrictions on

the public-access presumption is that judicial transparency fosters public confidence in the judicial system and facilitates accountability among those who serve it.[90] The common-law presumption of public access is so strong that it can be rebutted only if countervailing interests heavily outweigh the public interests in access.[91] Where there is a First Amendment right of access, the court may restrict access "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest."[92] Irrespective of the particular basis underlying the right of access to judicial records, it "may be abrogated only in unusual circumstances."[93]

By designating opinions "confidential," a court does more than exclude the opinions from the development of the common law (as with unpublished cases that are open to the public but not precedential). "Confidential" opinions are removed from the public square altogether. Unlike other unpublished opinions, "confidential" opinions cannot be found in reporters, nor purchased from subscriber services, nor viewed on the internet, nor accessed at the court of appeals or at any other public office. For all practical purposes, they are invisible, entombed in a confidential file and out of the public's reach and awareness. Because the "confidential" designation is far more consequential than an "unpublished" designation, there is a heightened need for checks on judicial decisions to exclude court opinions from public access.

In Texas, it is an abuse of discretion for a district court to seal documents without first determining whether the rationale for sealing justifies depriving the public access.[94] The United States Court of Appeals for the Fifth Circuit follows the same rule.[95] Courts uniformly hold that secret opinions, though permitted in very limited circumstances, are rare and warranted only in the most sensitive cases.

The Supreme Court of Texas engages in open and robust legal analysis of the judicial-bypass statute every time it takes a judicial-bypass case, protecting the confidentiality of the minor while also giving

public access. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law."); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir.2008) (applying presumption to court orders, docket minute entry, and related exhibit); *In re Sealing & Non–Disclosure of Pen/ Trap/2703(d) Orders*, 562 F.Supp.2d 876, 890 (S.D.Tex.2008) (recognizing presumption of access to "pleadings, documents, affidavits, exhibits, and other materials filed by a party or admitted into evidence by the court. ... that influence or underpin the judicial decision").

90. *Van Waeyenberghe*, 990 F.2d at 849 ("Public access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.' "); *Lederman v. Prudential Life Ins. Co. of America, Inc.*, 385 N.J.Super. 307, 897 A.2d 362, 372 (2006) (noting that "[o]pen access is the lens through which the public views our government institutions.").

91. *Richmond*, 448 U.S. at 588–89, 100 S.Ct. at 2833–34 (Brennan, J., concurring).

92. *See Va. Dep't of State Police*, 386 F.3d at 575.

93. *Id.* at 576.

94. *See* Tex. R. Civ. P. 76a(1); *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 523 (Tex. 1998).

95. *See Van Waeyenberghe*, 990 F.2d at 849–50.

the public access to its opinions.[96] "Confidential" opinions, though permitted under the judicial-bypass statute, should be rare and only for cause shown that outweighs the value of openness.[97] In *In re Doe*, the Supreme Court of Texas explained that the requirement of a "confidential appeal" is not an impediment to publishing an opinion when the court can do so without disclosing the identity of the minor.[98] Echoing the public-access principle, the high court has embraced the judicial obligation to publicly interpret the judicial-bypass statute, noting:

As the head of the third branch of government with regard to civil matters, this Court has an obligation to provide guidance to lower courts through its published opinions. There would be no means of insuring consistency, uniformity, and predictability of the law if the court of last resort could not commit its analyses, reasoning, and decisions to writing in opinions and disseminate those opinions to the public. Without some explication from this Court of the meaning of "mature and sufficiently well informed," different courts around the state at both the trial and appellate level would surely arrive at very different constructions of what the statute requires. This result would undermine the rule of law that undergirds our whole system of justice.

By publicly announcing our construction of this statute, the Legislature and the public will know the meaning that we

have ascribed to it, and can order their behavior accordingly. In particular, the people, through their elected representatives, will have full opportunity to change the law, if they so desire, in light of the way the judiciary is interpreting and applying it.[99]

The Legislature revised the Family Code to allow for publication of intermediate appellate court opinions against the backdrop of the first *In re Doe* case. The same principles the high court applied in analyzing the publication issue following the initial enactment of Texas's judicial-bypass law in that case, now apply with equal force to the courts of appeals.

In making publication decisions, we must be mindful that "confidential" opinions create practical as well as jurisprudential problems.

### 1. "Confidential" opinions undermine a system based on stare-decisis principles.

"Confidential" opinions create no precedent. As the Supreme Court of Texas recognized in crafting the very first *In re Jane Doe* opinion, a lack of precedent "would undermine the rule of law that undergirds our whole system of justice."[100] Conversely, by publicly revealing the court's construction of the statute, the Legislature and the public know the meaning the court of appeals has ascribed to the statute and so can order their conduct accordingly.[101]

**96.** *See In re Doe 11*, 92 S.W.3d 511 (Tex. 2002); *In re Doe 10*, 78 S.W.3d 338 (Tex. 2002); *In re Doe 1*, 19 S.W.3d 300 (Tex.2000); *In re Doe 4*, 19 S.W.3d 337 (Tex.2000); *In re Doe 4*, 19 S.W.3d 322 (Tex.2000); *In re Doe 3*, 19 S.W.3d 300 (Tex.2000); *In re Doe 2*, 19 S.W.3d 278 (Tex.2000); *In re Doe 1*, 19 S.W.3d 249 (Tex.2000).

**97.** *See Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 509, 104 S.Ct. 819, 823,

78 L.Ed.2d 629 (1984) (noting that "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness.")

**98.** *In re Doe*, 19 S.W.3d at 252.

**99.** *Id.*

**100.** 19 S.W.3d at 252.

The crucial function of judicial writing is to communicate the court's rationale for its holding so that actors can conform their conduct to meet the law's requirements. The uncertainty and lack of coherence in the law that would flow from the concealment of opinions surely would make it harder for trial courts to do their job. Even worse, unbound by precedent, Texas courts could not achieve uniformity, consistency, and predictability in judicial decision-making that is so vital to our rule-of-law system.[102] Without some explication of the meaning of the new statutory provisions, different trial and appellate courts within this jurisdiction and beyond would surely arrive at different constructions of what the statute requires and how appellate courts are to review the trial court's findings and ruling.

Lawyers who are on the receiving end of serial "confidential" opinions (unmoored to any binding precedent or to one another) almost certainly would suffer interpretive problems. And, because "confidential" opinions are not known by the public, litigants cannot conform their conduct to do what the opinions require. Nor can lawyers conform their proof and presentation to meet the criteria set out in the court's "confidential" opinions. Trial courts not privy to the confidential appeals that produced the "confidential" opinions are equally ill-equipped because they, too, would lack access to the legal analyses of the issues they must decide in future judicial-bypass cases.

We would not put players to an athletic match without telling them how the referee would apply the rules. Nor would we permit some players to see the rules while concealing the rules from other players. Rule-of-law principles demand nothing less. It is unfair to keep the court's legal analyses secret from those who would seek relief under the statute. And, it is especially unfair to make the legal analyses available to some (those who are privy to the confidential appeal) while concealing them from everyone else. Bringing legal analyses into the light enables the applicants, the trial courts, and the public to understand how the rules are being applied. That is the purpose for providing a path for publication of courts-of-appeals opinions in judicial-bypass cases.

### 2. The needless designation of opinions as "confidential" deprives the Legislature the benefit of judicial writings.

The Legislature does not get access to "confidential" opinions. Therefore, if courts of appeals needlessly designate judicial-bypass opinions as "confidential," the Legislature does not get the benefit of judicial writings that call attention to procedures or problems that need resolution.

There is a heightened need for public access in the wake of a separate writing. Concurring and dissenting opinions foster and enhance the development of the law. They can be "catalysts for change, whether in the lower court sitting en banc or through intervention by the higher court or the legislative process."[103] Separate writings play a crucial role in our jurispru-

101. *Id.*

102. *See Hassan v. State*, 493 S.W.3d 103, 2013 WL 5807832, at *1 (Tex.App.—Houston [14th Dist.] Oct. 29, 2013) (approving request to publish opinion addressing novel issues after court of appeals had lost plenary power over its judgment) (published order).

103. Eva J. Guzman & Ed Duffy, *The (Multiple) Paths of Dissenting Judges in the Judicial Process*, 97 Judicature 105, 106 (2013) (citing examples that "demonstrate judges acting upon their oaths and dissenting in an effort to foster progress in the law").

dence because they enable people to consider minority viewpoints and alternative legal analyses.

Since 2003, the Rules of Appellate Procedure provide that all opinions in Texas civil appeals are published.[104] With this year's statutory amendment, "confidential" opinions in judicial-bypass appeals, though in the civil realm, now occupy a unique category—a throwback of sorts to the era when not publishing was an option in civil appeals. Before the change that removed the "do not publish" option for civil appeals, the Texas Rules of Appellate Procedure provided that a separate writer could force the publication of the opinions in a divided-panel case.[105] Because after 2003, there were to be no more unpublished opinions in civil cases, the rule addressing the divided-panel scenario was dropped like a buggy whip in the aftermath of motor cars.[106] Yet, the principle of giving the separate writer the power to publish was carried forward in concept.

The equivalent of what used to be publication is now designation as a "regular opinion" rather than a memorandum opinion.[107] Texas Rule of Appellate Procedure 47.4 allows a separate writer to force designation of an opinion as a "regular opinion" and remove the "memorandum opinion" designation.[108] There is currently no procedural rule expressly addressing the issue. But the rule under the former regime has long been part of the custom and practice in Texas and elsewhere. It evokes one of the founding principles of our democratic government, that we discover truths by engaging with competing ideas.

### 3. Keeping opinions "confidential" gives the public the perception of unfairness.

Perceptions count. "[W]ithout public confidence in our courts, our free society and free enterprise system cannot be long sustained."[109] Beyond delivering justice in individual cases, courts must meet the public's expectations by applying the law consistently and uniformly, so that the law will be predictable. If courts instead keep their decisions secret, the law will be unpredictable and the public will view the judicial process as unfair. During the long-running debate over the propriety and wisdom of unpublished opinions, jurists and commentators alike have pointed to public perceptions of unfairness that accompany unpublished opinions.[110]

104. See Tex. R. App. P. 47; Andrew T. Solomon, *Practitioners Beware: Under Amended TRAP 47, "Unpublished" Memorandum Opinions in Civil Cases are Binding and Research on Westlaw and Lexis is a Necessity*, 40 St. Mary's L.J. 693, 711–14 (2009) (explaining that the 2003 amendment to Texas Rule of Appellate Procedure 47 eliminated unpublished opinions in civil cases).

105. See former Rule 47.5 contained in Approval of Amendments to the Texas Rules of Appellate Procedure, Misc. Docket No. 02–9119 (Tex. Aug. 6, 2002) *printed in* 65 Tex. Bar J. 686 (Sept. 2002).

106. See Tex. R. App. P. 47.

107. See Tex. R. App. P. 47.4.

108. See id.

109. John L. Hill, Jr., Chief Justice of the Supreme Court of Texas, State of the Judiciary Address (February 9, 1987).

110. See *U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 425 n. 3, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993); *Felkner v. Jackson*, 562 U.S. 594, 596–98, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011); *Plumley v. Austin*, —— U.S. ——, 135 S.Ct. 828, 831, 190 L.Ed.2d 923, 190 L.Ed. 923 (2015) (Thomas, J., dissenting); Donna S. Stroud, *The Bottom of the Iceberg: Unpublished Opinions*, 37 Campbell L. Rev. 333, 336 (2015); Patrick J. Schiltz, *The Citation of Unpublished Opinions in the Federal Court of Appeals*, 74 Fordham L. Rev. 23, 49 (2005); Deborah Jones Merritt & James J. Brudney, *Stalking Secret Law: What Predicts Publication in the United States Court of Appeals?*, 54 Vand. L. Rev. 71, 97–98 (2001)

It is hard for people to accept what they are kept from seeing. The deniers of public access might act with the best intentions, yet the appearance still tends to place courts in a poor light. The legitimacy of our judiciary and our rule-of-law system turns on public access. To sustain public trust in these democratic institutions, we must not unnecessarily block public access to judicial opinions.

Even when a court of appeals designates an opinion "confidential," anyone at any time can petition the Supreme Court of Texas to order the publication of a court-of-appeals opinion in a civil appeal, and the high court has the inherent power to do so upon request or sua sponte, even in the absence of any express appellate rule in this regard.[111] Likewise, an appellant unhappy with a court of appeals's designation of an opinion may ask the en banc court to change the designation.[112] The rules permit the en banc court of appeals to order the panel opinion published even after expiration of the court's plenary power, and without any requirement (1) that consideration of a change in the opinion's designation be necessary to secure or maintain uniformity of this court's decisions; or (2) that extraordinary circumstances require consideration of a change in the opinion's desig-

nation.[113] Yet, in the case of "confidential" opinions, the only ones who will know about them and who could possibly take action to make the secret opinion(s) public are those privy to the confidential appeal.[114]

The law embodied in judicial opinions is no use to people who have no access to the opinions. Our system cannot work if the law is invisible. No public interest is served by keeping the law secret. Texans need to know how Texas courts of appeals interpret and apply the judicial-bypass law. Our rule-of-law system and the legitimacy of our courts depend upon it.

In sum, public access to judicial opinions ensures the benefits of a rule-of-law system, enables the Legislature to learn about potential issues and problems with legislation, provides attorneys and litigants access to the legal standards under which they must practice, conserves judicial resources, fosters the development of Texas jurisprudence, and builds public confidence in our courts.

(positing that judges might strategically publish only certain opinions for political purposes); Howard Slavitt, *Selling the Integrity of the System of Precedent: Selective Publication, Depublication, and Vacatur*, 30 HARV. C.R.-C.L. REV. 109, 110 (1995).

111. *See Public Citizen v. Third Court of Appeals*, 846 S.W.2d 284, 285 (Tex.1993) (ruling on stand-alone petition asking the Supreme Court of Texas to order a court-of-appeals opinion published under former Rule of Appellate Procedure 90(c) after the court of appeals had lost plenary power over its judgment); *Tex. Electric Serv. Co. v. Wheeler*, 551 S.W.2d 341, 343 (1977) (exercising Supreme Court of Texas's inherent power to sua sponte order a court-of-appeals opinion published, in

a high-court opinion denying rehearing of the denial of a writ-of-error application, even though the applicable version of Texas Rule of Civil Procedure 452 provided for automatic publication of court-of-appeals opinions only when the notation was "writ refused" or "writ granted" and even though the procedural rules did not state that the high court could order that court-of-appeals opinions be published).

112. *See* Tex. R. App. P. 47.6.

113. *See* Tex. R. App. P. 19.3, 47.6; *Hassan*, 493 S.W.3d 103, 2013 WL 5807832, at *1.

114. *See* Tex. Fam. Code Ann. § 33.004(c).